**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Sundaye Showers and
Robert Dunne, Jr.,

Plaintiffs,

v.

Prog Leasing, LLC d/b/a
Progressive Leasing,

Defendant.
_________________________________/

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1. This is an action for damages brought by individual consumers based on Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Consumer Communication Practices Act ("FCCPA"), Chapter 559, Florida Statutes.

## PARTIES

2. Plaintiff, Sundaye Showers, ("Sundaye"), is a natural person who resided in Ybor City, Florida at all times relevant to this action.

3. Plaintiff, Robert Dunne Jr. ("Robert"), is a natural person who resided in Holiday, Florida at all times relevant to this action.

4. Defendant, Prog Leasing, LLC d/b/a Progressive Leasing (hereinafter, "PL"), is a Utah Limited Liability Company that maintained its principal place of business at 256 West Data Drive, in Draper, Utah at all times relevant to this action.

**JURISDICTION AND VENUE**

5. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

6. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over each Plaintiff's claims under the FCCPA because each such claim shares a common nucleus of operative facts with each Plaintiff's claims under the TCPA. S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

**JOINDER**

8. Rule 20 of the Federal Rules of Civil Procedure provides, in part:

> (a) PERSONS WHO MAY JOIN OR BE JOINED.
>
> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

*See* Fed. R. Civ. P. 20(a).

9. “Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.” *United Mineworkers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138 (1966).

10. “Plainly, the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.” *Alexander v. Fulton Cnty*., 207 F.3d 1303, 1323 (11th Cir. 2000) (reversed on other grounds).

11. “A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined.” *Id.*

12. The rule “does not require that **all** questions of law and fact raised by the dispute be common, but only that **some** question of law or fact be common to all parties.” *Id.* at 1324 (emphases included) (citing *Mosley v. General Motors Corp*., 497 F.2d 1330, 1332 (8th Cir.1974)).

13. “[A]ll ‘logically related’ events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.” *Alexander,* 207 F.3d at 1323 (quoting *Mosley,* 497 F.2d at 1333).

14. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary. *See Mosley*, 497 F.2d at 1332.

15. Allegations of a company-wide policy that violates federal law have been held sufficient to establish that multiple plaintiffs' claims "arose out of the same series of transactions or occurrences." *See Alexander*, 207 F.3d at 1323 (citing *Mosley*, 497 F.2d at 1334).

16. Joinder is particularly appropriate at the pre-trial stage of litigation where "the alleged acts occurred are quite similar for each [p]laintiff with the majority of each [p]laintiff's allegations occurring [during a limited time period]." *See Nelson v. Chertoff*, 2008 U.S. Dist. LEXIS 82981, *16 (N.D. Ill. Sep. 10, 2008).

17. In the TCPA context, calls received by multiple plaintiffs from the same company using an autodialer support joinder under Rule 20. *See, e.g., Blair v. CBE Group, Inc.*, 2013 U.S. Dist. LEXIS 150996, *17-18 (S.D. Cal. Oct. 17, 2013); *Desai v. ADT Sec. Servs., Inc.*, 2011 U.S. Dist. LEXIS 77457, *4-8 (N.D. Ill. July 18, 2011).

**ADDITIONAL FACTORS SUPPORTING JOINDER**

18. The witness(es) that PL will produce in response to a notice of deposition pursuant to Rule 30(b)(6) will likely be the same individual(s) for each Plaintiff.

19. The information that PL will provide in response to interrogatories related to PL's policies, practices, and procedures will likely be the same, or substantially similar, for each Plaintiff.

20. The evidence that PL will produce in response to requests for production of documents related to Defendant's policies, practices and procedures will likely be the same, or substantially similar, for each Plaintiff.

21. Joinder will allow a single trier of fact to assess the pattern and frequency of PL's alleged misconduct, which is a relevant factor in the legal issues and damages in this case.

22. Joinder avoids the need to conduct multiple trials and empanel multiple juries to resolve fairly straightforward claims that Defendant violated the TCPA and FCCPA.

## ALLEGATIONS OF FACT COMMON TO ALL PLAINTIFFS

23. Each Plaintiff is a "consumer" as defined in Florida Statute §559.55(2).

24. Each Plaintiff is an "alleged debtor."

25. Defendant is a "debt collector" as defined by Florida Statute §559.55(6), and sought to collect a debt from each Plaintiff.

26. Each alleged obligation PL sought to collect from each of the individual Plaintiffs is a "consumer debt" as defined by Florida Statute §559.55(1).

27. At all times relevant to the claims asserted by the individual Plaintiffs, PL was attempting to collect on a debt that was issued and/or serviced by PL.

28. On several occasions within the past forty-eight (48) months, the dates of which will be discovered through discovery, PL willingly and knowingly used an automatic telephone dialing system (ATDS) to call each Plaintiff on his/her cellular phone on multiple occasions without Plaintiff's express consent, or after any such consent was revoked, in violation of the TCPA.

29. PL used a predictive dialer system to call each Plaintiff.

30. Each Plaintiff, on at least one occasion, communicated his or her desire that PL cease calling him or her, thereby revoking any consent to be called on his or her cellular telephone.

31. Notwithstanding these communications, PL continued to call each Plaintiff in connection with the collection of a debt.

32. PL's agents have the ability to immediately stop further calls to consumers, but PL's policy and practice is to continue calling consumers using its predictive dialer in spite of consumer requests for PL to stop calling, and consumer statements to PL that the consumer cannot and/or will not pay the debt.

33. PL's policy and practice is that when a consumer communicates his or her desire that PL cease calling, but does not do so in writing, PL disregards that communication as if the consumer never made the request.

34. PL's policy and practice is that when a consumer communicates his or her desire that PL cease calling, but does not do so in writing, PL does not record that request in PL's records related to the debt PL is seeking to collect from the consumer.

35. In this case, PL followed the aforementioned policy and practice when each Plaintiff communicated his or her desire that PL stop calling him or her.

## LEGAL ARGUMENTS COMMON TO ALL PLAINTIFFS

36. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

37. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

38. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶ 72-73.

39. The "called party" may revoke and prior consent to be called on their cellular phone in any reasonable manner. I*n the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, ¶ 55-70.

40. The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

41. The Communications Act of 1943, of which the TCPA is a part, defines “willful” as “the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision, rule or regulation....” 47 U.S.C. § 312(f).

42. In order to establish a “willful” or “knowing” violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. See *Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015) *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

43. Instead, a plaintiff need only show that the defendant engaged in a “voluntary act” that violated the TCPA. See *Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; see also *Roylance,* 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

44. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 1316, 1322 (S.D. Fla 2012).

45. Section 559.72 of the FCCPA provides, in part:

> Prohibited practices generally. – In collecting consumer debts, no person shall:
>
> * * *
>
> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family…

*See* Fla. Stat. § 559.72(7).

## INDIVIDUAL COUNTS AS TO EACH PLAINTIFF

COUNT ONE –*Sundaye Showers*

**Violations of the Florida Consumer Collection Practices Act**

46. Plaintiff, Sundaye Showers, re-alleges and incorporates by reference Paragraphs 2, and 23 through 45 above, as if fully set forth herein.

47. Around December 2014, PL began calling Sundaye on Sundaye's cellular telephone at phone number XXX-XXX-3129 in connection with the collection of the debt.

48. PL called Sundaye's cellular phone from various phone numbers, including but not limited to 877-593-0563, 855-225-2123, 801-424-7820, 801-424-7821, 385-351-1353, 801-424-7823, 877-593-1169, 801-424-7822, and 855-436-0256.

49. Shortly after the phone calls began, Sundaye communicated her desire that PL cease calling her.

50. Despite this communication, PL continued to call Sundaye on Sundaye's cellular telephone in connection with the collection of the debt.

51. Often, PL telephoned Sundaye multiple times a day.

52. On one occasion, immediately after speaking with PL, PL called Sundaye right back using an automated telephone dialing system.

53. On at least one occasion, PL called Sundaye in connection with the collection of a debt before 8:00 a.m. local time at Sundaye's location, without the prior consent of Sundaye.

54. PL caused Sundaye emotional distress.

55. CPA willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Sundaye with such frequency as can reasonably be expected to harass Sundaye, or engaging in other conduct which can reasonably be expected to abuse or harass Sundaye.

56. CPA violated Fla. Stat. § 559.72(17) by communicating with Sundaye between the hours of 9:00 p.m. and 8:00 a.m. in Sundaye's local time zone without the prior consent of Sundaye.

COUNT TWO- *Sundaye Showers*

**Violation of the Telephone Consumer Protection Act**

57. Plaintiff, Sunday Showers, re-alleges and incorporates by reference Paragraphs 2, 23 through 54 above, as if fully set forth herein.

58. Sundaye was the "called party" within the meaning of § 227(b)(1)(A) of the TCPA.

59. CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Sundaye's cellular telephone using an ATDS without Sundaye's prior express consent or after Sundaye had revoked such consent.

60. CPA voluntarily placed telephone calls to Sundaye's cellular telephone using an ATDS.

61. In addition, CPA failed to adequately place intermittent live verification calls to Sundaye's cellular telephone to ensure that Sundaye had provided his express consent to be called at that telephone number.

COUNT THREE- *Robert Dunne Jr.*

**Violations of the Florida Consumer Collection Practices Act**

62. Plaintiff, Robert Dunne, Jr., re-alleges and incorporates by reference Paragraphs 3 and 23 through 45 above, as if fully set forth herein.

63. Around November 2014, PL began calling Robert on Robert's cellular telephone at phone number XXX-XXX-7898 in connection with the collection of the debt.

64. PL called Robert's cellular phone from various phone numbers, including but not limited to 801-424-7820, 801-424-7821, 385-351-1353, 877-593-0563, 855-225-2123, 801-424-7822, 801-424-7823, and 877-593-1169.

65. Shortly after the phone calls began, Robert communicated his desire that PL cease calling him.

66. Despite this communication, PL continued to call Robert on Robert's cellular telephone in connection with the collection of the debt.

67. Often, PL telephoned Robert several times on the same day.

68. On one occasion, immediately after speaking with PL, PL called Robert right back using an automated telephone dialing system.

69. PL caused Robert emotional distress.

70. CPA willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Robert with such frequency as can reasonably be expected to harass Robert, or engaging in other conduct which can reasonably be expected to abuse or harass Robert.

COUNT FOUR- *Robert Dunne Jr.*

**Violation of the Telephone Consumer Protection Act**

71. Plaintiff, Robert Dunne, Jr., re-alleges and incorporates by reference Paragraphs 3, 23 through 45, and 63 through 69 above, as if fully set forth herein.

72. Robert was the "called party" within the meaning of § 227(b)(1)(A) of the TCPA.

73. CPA violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Robert's cellular telephone using an ATDS without Robert's prior express consent or after Robert had revoked such consent.

74. CPA voluntarily placed telephone calls to Robert's cellular telephone using an ATDS.

75. In addition, CPA failed to adequately place intermittent live verification calls to Robert's cellular telephone to ensure that Robert had provided his express consent to be called at that telephone number.

**JURY DEMAND**

76. Each Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, each of the individual Plaintiffs pray for the following relief:

a. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

b. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

c. Judgment against Defendant for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: March 14, 2016

Hyslip & Taylor, LLC, LPA

By: /s/ Sharina Romano

Sharina T. Romano, Esq.
Florida Bar No.: 65501
HYSLIP & TAYLOR, LLC, LPA
1100 W. Cermak Road, Suite B410
Chicago, Illinois 60608
(P) 904.853.3050
(F) 312.361.3509
(E) sharina@fairdebt411.com

*Counsel for Plaintiffs*